WhitakeR, Judge,
delivered the opinion of the court:
The plaintiff claims additional compensation for the time his rock crusher was idle while waiting on the defendant’s trucks to remove the stone that had been crushed.
*519 On April 3,1936, the Procurement Division of the Treasury Department advertised for bids for the furnishing of a rock-crushing plant of not less than 40 cubic yards capacity per hour, with 3-bin, 100-yard bunkers. Bids on two bases were required, one on an hourly basis, the other on a cubic-yard ■basis. Invitation for bids provided, in part:
This bid is solicited in advance of allocated funds. Awards will not be made until funds are available.
The plaintiff put in his bids on both bases on April 9, 1936, .and was low on both bases. His bid provided:
In compliance with the above invitation for bids, and subject to all the conditions thereof, the undersigned offers, and agrees, if this bid be accepted within 10 days from the date of the opening, to furnish any or all of the items upon which prices are quoted, * * *.
The bids were opened on April 10, 1936. Plaintiff’s bid was not accepted within the ten days specified, but it was •accepted on May 26,1936,46 days after the bids were opened. After acceptance plaintiff did not communicate with the Procurement Office, but he proceeded to furnish the rock crusher and to crush the rock required. He did this under the following circumstances: Although the contract for the rock crusher was made by the Procurement Division of the Treasury Department, the road work for which the crushed stone was desired was being done under the direction of the Works Progress Administration in the State of Washington near the city of Spokane. Before putting in his bid on April 9, 1936, plaintiff went to the local office of the Works Progress Administration in Spokane to inquire about the work covered by the invitation for bids. He was directed by that office to L. H. Rubicam, who was the Engineer and Project Supervisor in charge of the work. Plaintiff and Rubicam together visited the location of the quarry and the roadway where the crushed rock was to be used. The roadway then had not been sufficiently completed to receive the rock to be crushed, necessitating the use of stock piles, if the crushing was to proceed shortly thereafter. Rubicam also advised plaintiff that the defendant would remove the crushed rock from the bunkers promptly and pile *520 it in stock piles so that there would be no delay to the plaintiff’ in the crushing of the rock.
Plaintiff’s offer to crush this rock was made on condition that the bid be accepted within 10 days from the opening of the bids, which was on April 10, 1936. It was not accepted within that time and, therefore, plaintiff’s offer expired, and defendant’s later acceptance of it on May 26, 1936 did not give rise to a contract, unless plaintiff either by word or deed indicated his willingness to perform his original offer. Restatement of the Law of Contracts, §§ 40, 61, 73.
As stated above, plaintiff addressed no communication to-the Procurement Officer. Neither in one way nor another did he tell him whether or not he was willing to go on with the work notwithstanding the tardy acceptance of his offer; but when his offer was accepted he prepared to go ahead with the work and notified the project engineer of his willingness and intention to do so. This gave rise to a contract.
If there can be any doubt that the contract as originally proposed was finally entered into, that doubt is removed by the subsequent dealings between the parties.
The invitation for bids contained a clause giving the defendant the right to extend the rental period for 60-hour periods, but not beyond June 30, 1936. On this date the-plaintiff had been working only about two weeks, and the-necessary stone had not been crushed, and the defendant desired to continue the rental. Accordingly, it presented the-plaintiff with a paper styled, “Kenewal of Contract Number EKr-TPS-93-1430 with Max J. Kuney Company.” This, paper read:
The undersigned hereby agrees to the renewal of the-above contract for a rental period of 3 months from date of expiration on June 30,1936, at the original rental rate,, which is at the rate of fifty-eight (58$) cents per cubic-yard. The estimated number of working (^o^days) required to complete this project is 3 months.
The undersigned further agrees that this contract may be cancelled by the Government by five days’ written notice.
Max J. Kuney Company,
Signed: K. T. McAndrews, Title: Office Mgr.
Address, 124 E. Augusta, Spokane, Wash.
*521 Eenewal of the above contract accepted on July 14, 1936, effective upon expiration of the original rental period.
(s) E. M. QuinN,

State Procurement Officer.

This “renewal” was a recognition of the existence of the original contract.
It was a condition of the contract that the defendant would not delay the plaintiff in its performance. This necessarily is to be implied, at least. Also, while Eubicam did not have authority to contract, he did have authority to make binding representations as to the conditions under which the contract was to be performed. His representations made before plaintiff put in his bid, that stock piles were to be used, confirmed the implied condition of the contract that the defendant would not delay plaintiff. When plaintiff’s bid had been accepted and he had agreed to go on with the work, there had been no change in plan so far as he had been advised.
After he had expressed his willingness to go on and was preparing to move his rock crusher to the quarry, the road work had progressed to such a point that the defendant decided not to use stock piles, but to remove the rock to the roadbed direct from the bunkers of the rock crusher, and Eubicam orally advised plaintiff of this change in plan. Plaintiff protested against this change on the ground that delay would occur in taking the rock out of the bunkers, which would necessitate the suspension of operations, and that this would increase his expense. Eubicam, however, assured him that he would recommend payment of the in-, creased cost if there were delays and the cost was increased, and plaintiff proceeded with the work. At this time, however, plaintiff had already accepted the contract and this notification by Eubicam of a change in plan did not change the conditions thereof. In the first place, Eubicam had no right to change the terms of the contract, and, in the second place, he did not propose to do so, because he said that if there were delays he would recommend that plaintiff be compensated therefor. He certainly did not mean to impose a new condition, that plaintiff should not be compensated if delays *522 ensued. Plaintiff entered upon tbe performance of the contract on the original condition that he would not be delayed in its performance.
There was nothing therein contained about stock piles; the contract did not specify that defendant would remove the rock from the bunkers as soon as crushed, but it is to be implied, as we have stated, that it would not delay the plaintiff in the performance of his contract. Failure to remove the rock when the bunkers were full necessarily stopped the work. The proof shows that 7 times the defendant delayed plaintiff from 4 hours to 10 hours and 10 minutes, 16 times from 2 hours to 4 hours, and 17 times from 1 to 2 hours, 9[1] times from one-half hour to an hour, and 7 times from 15 minutes to 30 minutes, a total of 121.8 hours. By proper management defendant could have prevented the bunkers from filling up. If this could not have been done otherwise,, it could have been done by placing in stock piles the rock they were not ready to place on the road at the time. It was its duty to do this. It did not do so in order to save itself expense,[1] but this put plaintiff to extra and unnecessary expense. For this defendant is liable.
Plaintiff originally offered to rent his crusher for $20.00-per hour, but he now claims $24.00 an hour as the reasonable rental value. He explains this discrepancy by stating that his-$20.00 an hour bid did not include fuel and oil, and included but one man to operate the machine, whereas, under his bid that was accepted he was required to furnish fuel, oil, and a complete crew. Plaintiff introduces several credible witnesses to prove that $24.00 was the fair rental value while the machine was idle. Kubicam himself says this was fair. We are of opinion he is entitled to recover at this rate.
That rental value of the equipment is the proper measure of damages in a case such as this one is not open to dispute. See Steel Products Eng. Co. v. United States, 71 C. Cls. 457, 471; M. Cain Co., Inc., v. United States, 79 C. Cls. 290; Schuler & McDonald, Inc., v. United States, 85 C. Cls. 631; Rust Engineering Co. v. United States, 86 C. Cls. 461; Samuel Plato v. United States, 86 C. Cls. 665.
*523 It results that the plaintiff is entitled to recover from the defendant the sum of $2,923.20, for which amount judgment will be rendered. It is so ordered.
Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.

 The proof shows the defendant saved $20,000 by not using stock piles.